# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA RODRIGUEZ VELASQUEZ, | Case No. 1:17-cv-00612-SAB |
| Plaintiff, | ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL |
| v. | (ECF Nos. 16, 19, 20) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## I.

## INTRODUCTION

Plaintiff Victoria Rodriguez Velasquez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from psychotic disorder and bipolar disorder/major depressive disorder with anxiety. For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

/ / /

/ / /

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 8, 9.)

1

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed an application for supplemental security income on January 29, 2013, alleging disability beginning December 9, 2012.[2]  (AR 137-144.)  Plaintiff's applications were initially denied on August 23, 2013, and on reconsideration on January 6, 2014.  (AR 75-80, 84-89.)  Plaintiff requested and received a hearing before Administrative Law Judge Christine Hilleren ("the ALJ").  Plaintiff appeared for a hearing on June 24, 2015.  (AR 25-51.)  On August 27, 2015, the ALJ found that Plaintiff was not disabled.  (AR 7-20.)  The Appeals Council denied Plaintiff's request for review on February 22, 2017.  (AR 1-4.)

### A.      Hearing Testimony

Plaintiff testified at the hearing on June 24, 2015.  She is married with four children.  (AR 31.)  She has children who are 14, 13, and 12, and one child over 18.  (AR 32.)  She lives with her husband and her four children.  (AR 32.)  She attended school up to eleventh grade and has not earned her GED.  (AR 33.)  She has not worked since January 29, 2013.  (AR 33.)  She worked at Foster Farms in 2009.  (AR 35.)  She had worked for In Home Support Services taking care of her grandmother from approximately 1999-2001.  (AR 36-37.)

She has never had a driver's license because she never learned to drive.  (AR 32-33.)  Her husband drives her places and if he cannot drive her, she takes public transportation.  (AR 33.)  The last time she took public transportation was a year prior to the hearing.  (AR 33.)  Previously, she took public transportation once a month.  (AR 33.)

The only reason that she cannot work is because her medications make her drowsy.  (AR 37, 42.)  She takes Abilify, Trazadone, and Hydroxyzine.  (AR 37.)  Whenever she takes the medications, she is drowsy.  (AR 38.)  Her vision is kind of blurry and it is difficult to keep her eyes open.  (AR 37.)  The drowsiness causes her to fall asleep.  (AR 38.)

If she was at home instead of at the hearing, she would be asleep.  (AR 38.)  She generally sleeps between noon and 6:00 or 7:00 p.m.  (AR 38.)  She also testified that she takes her

---

[2] Plaintiff filed an amendment to her application on March 7, 2013.  (AR 145-147.)

medication at 5:30 a.m. and she begins to feel the effects of her medication by 6:00 a.m., so she sleeps the whole day until 4:00 or 5:00 p.m. (AR 39.) She also sleeps at night because of the medication that she takes at night. (AR 38.) She does get her kids to school and gets them dressed. (AR 39.) She then gets up and eats something before going back to sleep. (AR 39.) She then gets up to use the restroom and take her pills around 8:00 or 8:30 p.m. (AR 39.) After taking her pills, she falls asleep until she wakes up at 5:30 a.m. (AR 39.)

She has not told her doctor about the side effects that she is experiencing because she figures that the medications are supposed to make her drowsy and sleepy since they list those as side effects. (AR 40.) When she is taking her Abilify, she does not hear voices and she does not get paranoid. (AR 40.) She does not experience mental health symptoms when she is on her medications, but she does when she is off her medications. (AR 40.) She started taking her medications again yesterday. (AR 40.) She had been off them for a week because Abilify was not in stock. (AR 40-41.) Prior to that, she was taking her medications consistently. (AR 41.) She was first prescribed her medications when she got out of prison in 2009 or 2001. (AR 41.)

She saw Dr. Evangeline Murillo for the first time in April 2015. (AR 41.) She has not seen her since that appointment, but she had an appointment scheduled for the day after the hearing. (AR 41.) She sees Dr. Murillo for refills of her medication. (AR 41.) Dr. Murillo does not do any therapy with Plaintiff. (AR 41.) Plaintiff plans to talk to Dr. Murillo about adjusting her medications so that she is not experiencing such severe side effects. (AR 42.)

Plaintiff's daughter and husband do the cleaning and the shopping because she is always laying down. (AR 44.) She does not go anywhere on a regular basis during the day. (AR 44.) She has no problem getting along with other people when she is on her medication. (AR 46.) She has no fights with people when she is on her medication. (AR 46.) Even when she is tired, she still can take a shower. (AR 45.)

Vocational Expert ("VE") John P. Kilcher also testified at the hearing. (AR 46-49.)

**B.      ALJ Findings**

- Plaintiff has not engaged in substantial gainful activity since January 29, 2013, the application date.

- Plaintiff has the following severe impairments: psychotic disorder and bipolar disorder/major depressive disorder with anxiety.
- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.
- After careful consideration of the entire record, Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but she is limited to performing simple and routine tasks commensurate with an SVP level of two or less.
- Plaintiff has no past relevant work.
- Plaintiff was born on January 27, 1981, and was 32 years old, which is defined as a younger individual age 18-49, on the date the application was filed.
- Plaintiff has a limited education and is able to communicate in English.
- Transferability of job skills is not an issue because Plaintiff does not have past relevant work.
- Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.
- Plaintiff has not been under a disability, as defined in the Social Security Act, since January 29, 2013, the date the application was filed.

(AR 10-20.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

Step one: Is the claimant presently engaged in substantial gainful activity? If so, the

claimant is not disabled. If not, proceed to step two.

Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.

Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.

Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

///

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ erred in evaluating the opinion of her treating physician, Dr. Evangeline Murillo. Plaintiff also asserts that the ALJ erred by rejecting all the medical opinions regarding Plaintiff's mental impairments and impermissibly providing her own lay opinion regarding Plaintiff's mental impairments. Defendant counters that the ALJ appropriately evaluated the medical opinions along with the record in formulating Plaintiff's RFC.

### A.     The ALJ Did Not Err in Giving Little Weight to Dr. Murillo's Opinion

Plaintiff asserts that the ALJ did not apply the factors for evaluating a treating opinion set forth in 20 C.F.R. § 416.927(c), as required by Trevizo v. Berryhill, 871 F.3d 664, 676 (9th Cir. 2017), to Dr. Murillo's opinion.[3] Plaintiff also takes issue with the reason the ALJ provided for giving little weight to Dr. Murillo's opinion.

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional. See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). In general, a treating physician's opinion is entitled to greater weight than that of a nontreating physician because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995) (citations omitted). A treating physician's opinion is entitled to controlling weight on the issue of the nature and severity of the claimant's impairment where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 416.927(c).

"If there is 'substantial evidence' in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to 'controlling weight.' " Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2). "In that event, the ALJ is instructed by § 404.1527(d)(2) to consider the factors listed in § 404.1527(d)(2)-(6) in

---

[3] Plaintiff cites to section 404.1527(c), which is the corresponding section for claims for disability benefits and the section that was cited in Trevizo. Section 416.927(c) is the appropriate section for claims for supplemental security income. As Plaintiff applied for only supplemental security income, the Court will refer to section 416.927(c) when discussing whether the ALJ in the instant case correctly applied the factors.

determining what weight to accord the opinion of the treating physician." <u>Orn</u>, 495 F.3d at 632. The factors to be considered include the " '[l]ength of the treatment relationship and the frequency of examination' by the treating physician, the '[n]ature and extent of the treatment relationship' between the patient and the treating physician, the '[s]upportability' of the physician's opinion with medical evidence, and the consistency of the physician's opinion with the record as a whole.' " <u>Ghanim v. Colvin</u>, 763 F.3d 1154, 1161 (9th Cir. 2014) (quoting 20 C.F.R. § 404.1527(c)(2)-(6)). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." <u>Ghanim</u>, 763 F.3d at 1161 (quoting <u>Orn</u>, 495 F.3d at 631).

If a treating physician's opinion is contradicted by another doctor, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record. <u>Ryan v. Commissioner of Social Sec.</u>, 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting <u>Bayless v. Barnhart</u>, 427 F.3d 1121, 1216 (9th Cir. 2005)). Where the treating physician's opinion is contradicted by the opinion of an examining physician who based the opinion upon independent clinical findings that differ from those of the treating physician, the nontreating source itself may be substantial evidence, and the ALJ is to resolve the conflict. <u>Andrews</u>, 53 F.3d at 1041. However, if the nontreating physician's opinion is based upon clinical findings considered by the treating physician, the ALJ must give specific and legitimate reasons for rejecting the treating physician's opinion that are based on substantial evidence in the record. <u>Id.</u>

The ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings. <u>Thomas</u>, 278 F.3d at 957. It is the ALJ's responsibility to consider inconsistencies in a physician opinion and resolve any ambiguity. <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 603 (9th Cir. 1999). The ALJ can meet her "burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989) (quoting <u>Cotton v. Bowen</u>, 779 F.2d 1403, 1408 (9th Cir. 1989)).

This Court agrees with several other district courts that have concluded that <u>Trevizo</u> does not require an explicit analysis of the factors in section 416.927(c). <u>See</u> <u>Standen v. Berryhill</u>, No.

2:16-cv-1267-EFB, 2017 WL 4237867, at *8 (E.D. Cal. Sep. 25, 2017); Torres v. Berryhill, No. 3:17-cv-01273-H-PCL, 2018 WL 1245106, at *5 (S.D. Cal. March 9, 2018); Hoffman v. Berryhill, 2017 WL 3641881, at *4 (S.D. Cal. Aug. 24, 2017) report and recommendation adopted, 2017 WL 4844545 (S.D. Cal. Sep. 14, 2017)).  While there does not have to be an explicit recitation of the factors, the ALJ's decision must reflect that the ALJ considered the factors.  Id.  Upon review of the ALJ's decision, the Court finds that the ALJ did consider the factors listed in section 416.927(c) in determining the weight to be provided to Dr. Murillo's opinion.  (AR 15-17.)  Next, the Court discusses whether the ALJ provided a specific and legitimate reason supported by substantial evidence for rejecting Dr. Murillo's opinion.

The ALJ gave little weight to Dr. Murillo's opinion because Dr. Murillo only saw Plaintiff on one occasion prior to the date of the hearing, at which time Plaintiff's mental status examination was normal.  (AR 17.)  The ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings.  Thomas, 278 F.3d at 957.  A doctor's examination findings can be used to reject that doctor's subsequent opinion.  See Johnson v. Shalala, 60 F.3d 1428, 1433 (9th Cir. 1995).

Plaintiff asserts that while Dr. Murillo only saw Plaintiff one time prior to her issuing her opinion, the ALJ should have considered that Dr. Murillo prescribed medication to Plaintiff as early as August 2014.  Dr. Murillo's June 2, 2015 opinion indicates that she only saw Plaintiff one time, which was on April 2, 2015.  (AR 307.)  In addition, Dr. Murillo's treatment notes reflect that she only saw Plaintiff one time, which was on April 2, 2015.  (AR 288.)  Further, Plaintiff testified that she saw Dr. Murillo for the first time in April 2015 and that she had not seen her since that time. (AR 41.)  There are notes in the record dated August 27, 2014, and September 26, 2014, that indicate that Dr. Murillo continued Plaintiff on medication after Plaintiff cancelled one appointment and did not show for another appointment.  (AR 290-291.)  However, the fact that Dr. Murillo prescribed Plaintiff medication in 2014 does not change the fact that Dr. Murillo only saw Plaintiff one time.

Plaintiff also asserts that the ALJ should have considered that Dr. Murillo had Dr. Patricia Santy's records because Dr. Murillo worked at the same mental health clinic as Dr. Santy.

8

However, as Defendant points out, there is nothing in the record indicating that Dr. Murillo reviewed Dr. Santy's records or received input from Dr. Santy in formulating her June 2, 2015 opinion. The Court notes that Dr. Murillo's opinion does not identify any clinical findings—either findings from Dr. Murillo's examination or findings from other providers—to support her opinion. (AR 306-307.)

During the April 2, 2015 visit with Dr. Murillo, Plaintiff indicated that her sleep was normal and she has improved on the Trazodone. (AR 288.) The only side effect noted was that the medication calms her anger problem. (AR 288.) Plaintiff claimed during the hearing that the only reason that she could not work was because of the side effects from her medications. (AR 37, 42.) The April 2, 2015 treatment note does not indicate that Plaintiff was experiencing sleepiness, drowsiness, or issues with vision as side effects of her medications. (AR 288.) In addition, as the ALJ stated, the objective mental examination during that visit was normal. (AR 288.) Plaintiff was alert, had logical responses, had no delusions, and had no signs and symptoms of psychosis. (AR 288.) Dr. Murillo noted that the delusion that Plaintiff had involving her husband having an affair with her daughter "appears to be gone now." (AR 288.)

Plaintiff cites evidence in the record that she claims is consistent with and supports Dr. Murillo's opinion regarding Plaintiff's mood swings and lack of concentration. The ALJ considered this evidence in rendering her decision and this other evidence in the record does not change the fact that Dr. Murillo's opinion was based on her own generally normal examination findings.

While Plaintiff disagrees with the ALJ's interpretation of the evidence, the ALJ is responsible for resolving conflicts in the medical testimony. It is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

Here, the ALJ's interpretation was rational. Therefore, the Court finds that the ALJ's finding that Dr. Murillo only saw Plaintiff one time, during which Plaintiff's mental status examination was normal is a specific and legitimate reason supported by substantial evidence for giving little

weight to Dr. Murillo's opinion.

**B.      The ALJ Did Not Impermissibly Provide Her Own Lay Opinion**

Plaintiff also asserts that the ALJ erred by impermissibly providing her own lay opinion regarding Plaintiff's mental impairments because she discounted all four doctors who provided opinions regarding Plaintiff's mental impairments. Defendant counters that the ALJ properly performed her function as factfinder in determining Plaintiff's RFC.

It is error for the ALJ to define her own limitations for a plaintiff. See Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (the ALJ was not qualified as a medical expert and therefore could not permissibly go outside the record to consult medical textbooks for purpose of making his own assessment of the claimant's physical condition); Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, ... the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the determination."); Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."). The ALJ is to determine credibility, resolve conflicts in testimony, and resolve ambiguities; however, her findings must be supported with specific and rational reasons. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

Plaintiff is correct that no doctor specifically opined that she is limited to simple, routine tasks. However, three doctors opined that she does not have a severe mental impairment, which is less restrictive than the RFC that the ALJ found. While the ALJ gave little weight to the four opinions in the record assessing Plaintiff's mental impairments,[4] the ALJ considered and utilized these opinions in formulating the RFC. This is not a situation where the ALJ evaluated medical records without any opinions. The ALJ had four opinions in the record. However, the ALJ found that none of the opinions accurately reflected Plaintiff's RFC. The ALJ did not discount all the opinions and then give a less restrictive RFC. The only opinion that was more restrictive than Plaintiff's RFC was the opinion by Dr. Murillo. As discussed above, the ALJ properly discounted

---

[4] The ALJ gave little weight to the opinions of Dr. Telford-Tyler (July 29, 2013) and Dr. Balson (January 2, 2014) considering the subsequently introduced medical records showing severe mental impairments. (AR 17.) The ALJ gave little weight to the opinion of Dr. Lewis because of the objection of Plaintiff's representative at the hearing before the ALJ and the opinion's inconsistency with the record. (AR 17.)

Dr. Murillo's opinion. The opinions by Dr. Lewis, Dr. Janet Telford-Tyler, and Dr. P.M. Balson all were less restrictive than the RFC. The ALJ gave Plaintiff the benefit of the doubt and found an RFC that was more restrictive than these 3 opinions.

When formulating Plaintiff's RFC, the ALJ also considered Plaintiff's statements regarding the intensity, persistence, and effects of her alleged symptoms. (AR 14-18.) The ALJ recognized that Plaintiff's allegations of disability were primarily based on subjective symptoms, so her credibility was a material factor. (AR 16.) The ALJ discounted Plaintiff's statements and Plaintiff does not challenge the credibility determination in this action.

The ALJ found that the medical evidence supports the RFC. (AR 18.) In discussing the objective evidence, the ALJ noted that Plaintiff's recent treatment notes showed significant improvement with medication and therapy, including essentially normal mental status findings and GAF scores of 55. (AR 15, 288.) The ALJ also found that the medical record does not indicate that Plaintiff spoke to her doctor about the alleged side effect of drowsiness. (AR 15, 284, 288, 292, 294, 307.) Therefore, substantial evidence supports the RFC.

Thus, the Court finds that the ALJ did not impermissibly substitute her lay opinion and the ALJ did not err in formulating Plaintiff's RFC for her mental impairments.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## V.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ did not err in evaluating Dr. Murillo's opinion and in formulating the RFC regarding Plaintiff's mental impairments.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Victoria Rodriguez Velasquez.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:  __**May 2, 2018**__

_____
UNITED STATES MAGISTRATE JUDGE